Good morning, Your Honors. Jesse Mormon on behalf of Petitioner. There's two choices here, I believe. One is a remand under 28 U.S.C. 2347, and the other is to decide that the Board is wrong on the motion to reopen. Those are the only choices? Well, from our side, yes. There's some less happy choices for you. Yes, I know. There's no question in this case that, or in any case with a motion to reopen, that the Board has limited discretion. And that's been first by regulation. The problem is you're way out of time here. Sir? You're way out of time. Yes. For a motion to reopen. It's 90 days, right? Yes. And we're way past 90 days. That's true. And so on that issue. Given that situation, what can you? On that issue, we relied heavily on the Seventh Circuit case in Waukolo. We don't have authority directly on this point. But the existence, the fact that her case was denied on a credibility finding, that there were minor inconsistencies between her application and the case. But you can't raise that now, can you? She didn't appeal the. Well, it was raised in the motion to reopen. So if there's any room for a discretionary decision to view those, it was already raised with the Board, and they denied the motion to reopen. And. Isn't the basis of her motion to reopen that she has new evidence? Yes, that's true. And what you're saying based on the Seventh Circuit case is that a change in personal conditions can be grounds for reopening. Yes. Now, assuming that's true, how is new evidence a change in personal conditions? Well, it's only a change in condition in that it's now possible to prove what her condition was all along. The Seventh Circuit. That sort of defeats. Well, the Seventh Circuit case was offering this woman a chance for relief, not because she was going to be tortured, but because her daughters were going to be tortured if she went back to Nigeria. And so that is an analogy. But that's something new that happened as a result of changed circumstances and passage of time. In your case, believing your client, the vasectomy took place in the past. It's not coming back, right? It's not being undone. The vasectomy is not being undone. Nothing about her personal circumstances changed. The only thing that changes is she found proof, she says, that would support her earlier claim that the vasectomy was done involuntarily. Yes. How does this change circumstances? This sounds a lot like proof that circumstances have not changed, almost the exact antithesis of what the Seventh Circuit said was okay to look at. Well, actually, in the Seventh Circuit, there were no changed circumstances. There was another child born, but the first child was born before her deportation hearing and was a 13-year-old at the time of her third motion to reopen. And then the fourth, the second child was born and was a few years old. And the Seventh Circuit said, well, a younger child is a changed circumstance. However, you know, the 13-year-old would be in the same danger. And so I think it's a device the court used. And what I began with. I thought the idea was that when she went past one child, there was an increased danger. No. If you have one child, it's okay. If you go, you know, you have a second or third child, that's a changed circumstance because according to Chinese policy, one child is okay, two or three children are not. Yes. Well, she already had three children, and her husband was sterilized. The board actually in May this year decided a case. I'm sorry. This is your case. Yes. We're talking about the Seventh Circuit. She's Nigerian. When you said Chinese, I thought you were talking about the Seventh Circuit. Oh, I see. No. In this case, the new evidence was the evidence of a forced vasectomy. That was the new evidence? Yes. And she tried to establish that there was no way she could get that evidence before? Yes. Well, her circumstance is being detained. I mean, the answer to that was no. She didn't establish that there was no way they could have proved that it was forced before, right? I mean, why was she unable to prove it before? Because she was detained when she tried to enter. She had a hearing very soon, you know, within a few months. Her attorney visited her, I think, three times, but didn't have a Chinese interpreter with her until the day of the hearing. And then she discovers that there was a vasectomy and tries to present the record. And the judge says, well, you didn't make it in your application. So even if they had known, in that amount of time, because the husband was hiding in northern China, there was no time to contact him and then to convince him to go back to the hospital and get a record. And so the woman sat in jail for two or three years before she finally got this. And then it's time to move to reopen once we have some new evidence. So within this strict framework of motions to reopen, we would, if the Court has to decide that issue, we would ask that it be analogized to change circumstances the way the Seventh Circuit did with the case there. However, I believe that the Court has independent discretion under 28 U.S.C. 2347 to remand. The agency, the Board of Immigration Appeals and the Immigration Court, have really had their jurisdiction restricted by regulation and statute. And I believe this is a safety valve where the Court can say, you know, we have discretion. We can remand for taking of evidence. I'm sorry. And what gives us the authority? I thought we could only review decisions of the Board. We can say the Board erred, the Board got it right, the Board abuses discretion. I was not aware we have authority to make rulings that are not based on the Board's actions. I mean, if the Board erred, we can say, okay, go back and do it again. I'm not aware of authority saying, well, yes, the Board had no authority to reopen, so did everything just right. But we have authority to say, do it again anyway. Where does this come from? I don't know any case holding, reaching that far, but there is authority for the Court to remand for taking new evidence. And that's a separate independent. It's not. If there's a justiciable reason for doing so. Well, the Board's. If the Board did something wrong in not taking the evidence, as, for example, changed personal conditions, then, yeah, maybe that would work. But to just say out of the blue, well, if we were doing it, we would take new evidence, so we're going to tell the Board it has to. That's a pretty far jump, isn't it? It is a jump. I'm so confused about what the new evidence is. There's a certificate that or some medical proof that her husband had a vasectomy, right? Yes. And how does that really change anything? Her testifying before there was a forced vasectomy. Does this certificate prove that it was a forced vasectomy? I don't know that it proves at that point that it was forced, no, but it's corroborating evidence. I see. In an asylum case, often the applicant can't get documents to prove the case, and testimony by itself can be sufficiently credible. In this case, there were elements that led the judge to doubt the credibility. Well, but she presented her vasectomy claim the first time around and was not believed. And I guess I have the same question that Justice Sotomayor had. If you had a certificate that said, look, this was a forced vasectomy and proof of that, then that would be sort of one class of proof. But if it's just a certificate that he had a vasectomy, how does that change the situation? How would that make it any more believable that it was forced? Well, it's corroborating her story that, you know, it's not a fabrication that he did have a vasectomy. Then we can't – we may not be able to find documents that it was forced. I don't know – we don't have any expert opinion exactly what this – that this is a forced – this document. The point is, in kind of simple terms, is you want to set all the timetables, you know, a lot of settled law based on some possibly corroborating evidence that doesn't really change much. It seems to me if we're going to change all the law and upset all the timetables, it ought to be some really earth-shaking evidence of something different going on. Well, I would urge that asylum and torture convention cases should have a different standard of analysis because of – it's not – you're not deporting somebody back to a country where it's just an economic situation. You're deporting somebody where they will have really severe problems, not ordinary life again the way they knew it before. And the remedy under the Convention Against Torture is mandatory. The country shall not deport a person back where there's a likelihood of torture. And – And forced sectomies considered torture? Yes, I think so. Yes, I would think so. Sounds like torture to me. That's – You would think so? You know so? Or what? Well, I don't know a case interpreting that as one way or the other. I mean, there are lots of medical procedures one might not want to undertake that would nevertheless not necessarily amount to torture. Some places do conselectomies on a regular basis. I think it's a good thing. Maybe it is a good thing. I don't know. I'm not a doctor. Well, the vasectomy has already occurred. The petitioner here fears she herself will be in trouble when she's back there. Well, it may be. And vasectomy, clearly, is the same thing. I'm trying to promote policies that people – some people agree with, some people disagree with, but they're not done without anesthesia or without sterile procedures. They're not done to inflict pain. They are done to promote this governmental policy. And I'm wondering how that falls into the definition of torture. Well, I believe the Court's assuming too much about medical procedures under the population planning policies in China about what kind of anesthesia is used. We've had quite a few cases about dealing with procedures, documenting procedures in even small villages in China. And from what I can tell, they're pretty sophisticated. Well, the – They have pretty regular bases. They have sonograms and they have sterile procedures. It's obviously not where you and I would prefer to have major surgery, but I don't think we can assume that they are so backward. This is all done, you know, with a butcher knife and somebody biting down on a piece of – on a branch or something. I don't think that's how medicine is practiced in China. I don't think we have evidence of that. Well, I'm not able to provide evidence to the Court, but there's many stories of women undergoing forced abortion at 8 months without anesthesia, a very abrupt procedure. Okay. I think that was time. Thank you. May it please the Court. I'm Jennifer Parker from the United States Department of Justice, and I represent the Respondent, the Attorney General, in this case. In this case, the petitioner was given a hearing before the immigration judge. After it was denied and affirmed by the Board, the petitioner, by her own admission, did not file a petition for review of that decision. She then waited two years to file a motion to reopen, which did not comport with any of the statutory or regulatory requirements, and the Board properly denied it and did not abuse its discretion in doing so. I would just like to point out with the Seventh Circuit case that petitioner is relying on, that did not deal with any untimely motion to reopen, so it is a completely different circumstance. It didn't deal with changed country conditions, which in an untimely motion to reopen, you have to show that there was some sort of changed country condition. And the petitioner is asking you to analogize this new corroborating, well, it's not even new, this corroborating evidence that she could have put in before as changed country conditions, and the government submits that that is just not something that the Board was required to do. In fact, the statute would mandate that they don't reopen under that case. So, absent any further questions from the Court, the government admits that the Board did not abuse its discretion in denying this untimely motion to reopen, and this Court should provide a petition for review. Thank you. Mr. Seigel, thanks a million. Well, next, your argument in the case of United States v. Taylor. United States v. Victor Leroy Taylor. We have two Taylor cases on our calendar. You may proceed. Thank you. Good morning to this Court. Mundo Espinosa here on behalf of felon Victor Taylor. The facts in this case are very important in that the government knew that Victor Taylor had a history of engaging himself in this same type of wired bank, if I may say, sorry, post office schemes. As a matter of fact, dating back to 1993, there was even a temporary restraining order. There was a consent decree and so forth. The violations that were before, the facts that were before Judge Byrne, were that dating back to 1995, 1997, defendant Pelham was then indicted in 1999. It was in June of 1999, and with a series of counts. And the case proceeded to trial in August of 1999. Defendant was convicted at that time. Before the sentence, which took place in July, I believe, sorry, I think it was in May of the year 2000. The government already knew that there were some of the facts dating back, I believe, one month prior to the trial, where Pelham had also, had continued to engage in the same type of scheme. So the government knew that probably four months before Mr. Taylor was sentenced, obviously in the first case before Judge Byrne. What is interesting here, and of course I raise the argument of indicative prosecution in this case, concerning the fact that the government, by bringing the second indictment in this case, was active vindictively. In the sense that the government knew at the time that Appellant Taylor had engaged in all those acts, as a continuing, as a matter of fact, the government agreed that it was the second case and the first case were inextricably intertwined. In other words, because- Well, it was different victims, a different course of conduct. I mean, generally he was, he had gone back to the same well at which he had been hogtied before, but that doesn't really mean it's the same course of conduct, does it? Well, I believe that, yes, I correct. First of all, yes, I agree with you that there were different victims. But at the same time, it could be considered relevant conduct, because the government does it every day. So it's vindictive sentencing, not prosecution. Vindictive prosecution, vindictive sentencing. There was a two-year gap between the end of the first and the start of this one, wasn't there? My understanding was that it was a continuing up to the time of the indictment in the first case in June of 1999, and then in September of 1999, Taylor was again engaged in the same, exactly, even the probation report, the PSI stated, it is the same thing. Taylor was, yes, there were different victims. But then the government, instead of saying to Judge Byrne, we have additional relevant conduct that you could consider, the government said, we will not tell you, Judge, anything concerning that conduct. We will separate the cases, and you can go ahead and sentence him in the first case. When they knew, as a matter of fact, on page 12 of my opening brief, I clearly state a list of all the facts that were basically completely and strictly intertwined. In other words, the same type of a scheme. Did the fact that there were two separate prosecutions curtail the judge's discretion to sentence concurrently? Could he – could the judge have decided that he would make concurrent sentences so it wouldn't have made any difference? Was the judge precluded from doing that under the sentencing guidelines? You're talking about the second case? On the second case, making it concurrent to the first one. The guidelines prevent him from doing that? I think the judge in the second case, based on, I believe, 5G1.3c, I believe that the judge could have sentenced him concurrently and even consecutively or partially concurrent, if I remember. Okay. So the two prosecutions don't really force the judge to do, you know, anything different from what you wanted done? That is correct. That's basically my position. Well, but that sort of undermines your position. I'm sorry? That sort of undermines your position. If having two prosecutions didn't deprive the sentencing judge of authority to group the conduct or to give concurrent sentences, it just means that you wound up having a decision made by Judge — In the second case? Judge Tagasucki or Judge Hatter rather than Judge Byrne, right? Tagasucki, right? Yes. So what you lost is instead of having one judge exercise discretion, you had another judge exercise discretion. Why wasn't the case lower number to Judge Byrne anyway? Well, I believe that Judge Byrne, if the government had wanted to, they could have presented that. First of all, the government didn't have to indict the second time. They don't have to indict at all. They could go to the beach and let criminals run free. It is correct. But that would put you out of business. No, I understand. The point that I'm trying to make is that why would the government decide to indict the second time when they could have presented relevant conduct to the judge in the first case? That's a wonderful thing for you to wonder about. And maybe after the cases are over, you went to the prosecutor and have a cup of coffee, and maybe he'll tell you. But I don't understand why this is something that we need to wonder about that has anything to do with questions of indicative prosecution. Well, I think the government should be under some type of duty to advise the court, like in this case with Judge Byrne, about the relevant conduct already in their hands to be able to say, you know, the government does it all the time. Actually, maybe I can say it a little differently. The problem here is I didn't see much evidence of vindictive prosecution. So when I'm trying to figure out, you know, was the government really being vindictive here, and I get down to this point where what the government's doing isn't restricting the judge's discretion. So I'm getting the idea that's just more weight against the idea that there was – that there wasn't any – that there was vindictiveness. But it restricted Judge Byrne, no question about it. Obviously, Judge Nakasu was completely different. All right. All right. Let me just conclude by saying I just want to make sure. The – my argument was that it was before Judge Byrne. And the government was under a duty, I believe, because there's this – the U.S. guidelines have certain – where does the duty come from? In other words, prosecutorial discretion is pretty broad, and the courts usually stay away from messing with prosecutorial discretion. Now, one element that – one thing that does restrict prosecutorial discretion is the duty not to prosecute vindictively. But you have to bring yourself within that duty. And I think Judge Rustani has – and I tried to – ask you a question. What's the standard for vindictive prosecution, and how have you met it? In this case, the – what happened was that I believe that the government is under a duty of fairness in order to be able to advise the court of relevant conduct for the court to apply the United States Sentence Guidelines. In this case, in the first case – What's your best case? It says that the prosecution, to avoid what? Vindictiveness, has to look at the sentencing guidelines and say, okay, out of this whole universe of things this guy has done, we've got two separate courses of conduct, two separate sets of victims, separated in time. What gives the government the obligation under the guidelines to file – to bring that in in the first case? The government is always under an obligation to bring to the court's attention relevant conduct, irrespective of what that conduct may be. Whether it could be in Oklahoma. Even if the – well, no. That's only if it chooses to rely on the relevant conduct to enhance a sentence. But what if it chooses to say, look, we want to treat this as a separate offense? We think this is – this may be relevant conduct in this case, but we're not going to rely on it to enhance the sentence in this case. We think we can get a whole other prosecution out of it. Well, then the government can piecemeal a set of facts and a set of circumstances into three or four indictments. And now that – Two separate – two separate courses of conduct with separate victims, separately chargeable and separately convictable, where's the duty to combine them? And where the judge in the second case can go back and consider the sentence in the first case and still treat them as a whole ball of wax. Well, of course, the way it ended up, obviously, that Judge Takasugi said, well, look, I mean, this is a different indictment. Now I have a certain – That's how he exercised his discretion. It sounds like he came to the same conclusion the prosecutor did, that it was so separate that they ought to be prosecuted separately. If I may conclude by just saying one thing. For example, in drug cases, they do it all the time. Even there is – let's assume that Taylor would have been involved in a drug case and he would have been arrested and prosecuted. If the government would have found out that Taylor was doing and continuing to sell drugs, they would have brought that as relevant conduct, because in drug cases you can bring it from Oklahoma, you can bring it from Europe, and it will be relevant conduct. That's what I say that the government should have. But isn't that the government's choice? In other words, they're under no obligation to bring a bunch of drug deals from Oklahoma into a California case unless they want to enhance the California sentence. And if they don't say a thing to the sentencing judge, the sentencing judge knows nothing about what happened in Oklahoma, and this guy walks as far as any impact on the sentence. I understand your position, but my position is that the government is under a duty to advise the court. The duty. Unless they want to enhance the sentence. This is an adversary system. Yes. And unless the government wants to enhance the defendant's sentence, where does the obligation come from to bring in relevant conduct? I believe the government was quite conscious of what they were doing. I cannot prove actual intent. I can't. It's impossible. But I knew – I feel that the government knew quite well what they were doing, and they knew they had only gotten 60 months out of Judge Byrne, and they brought another indictment. I mean, I'm not going to stop them from doing that, but I think that the government should not have – should not be given that broad of a – it should be under a duty. I'm coming back. It should be under a duty to be able to present that it's relevant conduct, because if they present it to the judge... Well, this is fine. I mean, you can write to the sentencing commission and have them amend the guidelines to try to provide for such a duty. But the fact that you think the government has a duty is not terribly persuasive. Or you could ask Congress to amend the statute. But you're trying to invent a duty at a far cross, and it's just not there. I think there was a continuity of activity by the appellant, and I think that the government should have. But then... Okay. Thank you very much. Thank you. Are you going to bring your sandbag with you? Do you think there's anything you've heard that you need to respond to? Wasn't adequately covered in your brief? First of all, may I please record Daniel Shulman appearing on behalf of the United States, Your Honor, unless there's any questions for the government, we're prepared to submit. Okay. Judge O'Hara, you will stand submitted.
judges: Kozinski, Tg Nelson, Restani